**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 05-864-PCT-FJM |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Johnny Chee, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The court has before it defendant's "Motion to Reinstate Court Appointed Attorney" (doc. 164). The defendant contends that he was not warned that he would lose his right to counsel if he did not cooperate, that no *Faretta* hearing was conducted, that he did not ask to dismiss his third lawyer, and that he did not engage in misconduct. He claims that "this whole fiasco arose out of a simple misunderstanding." Motion at 15. (Doc. 164). He acknowledges that he would not answer the court's questions but contends that his refusal to answer questions should have been construed as an interest in keeping Ms. Gitre as his lawyer rather than as an interest in representing himself. In the alternative, the defendant contends that even if his misconduct constituted a waiver of his Sixth Amendment right to counsel, he now reasserts it and asks us to "reappoint his counsel." Motion at 18.

I

Because Mr. Chee challenged the competence of Mr. Burns, Mr. Burns moved to withdraw. Mr. Chee failed to produce any evidence that would have suggested Mr. Burns' representation fell below the standard of care, but Mr. Burns satisfied us that his was a "noisy" motion to withdraw and we granted it with the observation that if it "happens again, it raises sort of an inference that the problem is not with the lawyer but perhaps with the client." Transcript of January 26, 2006 at 9.

Mr. Chee was then unhappy with the new lawyer, Mr. Kunkle, and we held a hearing to hear his complaints, at which Mr. Kunkle expressed the view that he would "suspect that Mr. Chee is going to be unhappy with almost anyone appointed for him." Transcript of July 18, 2006 at 8. Mr. Kunkle characterized the defendant as quite manipulative. At that hearing, we stated the view that "by the time a person is unhappy with his second appointed counsel, I start getting really suspicious about that person's good faith. It's one thing to go through one lawyer, but then when you have problems with the second lawyer, then it's time to focus on whether the problem is with the lawyer or with the client." *Id.* at 21. We carefully explained to Mr. Chee the respective roles of a lawyer and the client. Because it was clear that Mr. Chee wanted more control over his case than any lawyer would allow, we suggested that he might have to represent himself in order to make the decisions he wanted to make. Not having heard any legal basis to remove Mr. Kunkle, we denied Mr. Chee's motion to dismiss him and said "I think you have had enough lawyers in this case." *Id.* at 25. We then asked him if wanted to go to trial with Mr. Kunkle or represent himself to which the defendant responded "I will try and represent myself instead of getting hanged by him." *Id.* at 26. We then granted Mr. Kunkle's motion to withdraw because he felt that Mr. Chee had poisoned the relationship. We therefore appointed a third lawyer and asked the defendant to discuss the question of self-representation with the third lawyer before he made any decision.

At a status conference on November 27, 2006, Ms. Gitre, Mr. Chee's third appointed lawyer, stated that she had good rapport with Mr. Chee and Mr. Chee promised not to

- 2 -

1    communicate with the court without going through her. Transcript of November 27, 2006
2    at 3 and 9. We reminded Ms. Gitre that if her representation of Mr. Chee did not work out,
3    then "we were looking at a *Faretta* hearing." *Id* at 10.

4    On February 20, 2007, at our pretrial conference, Mr. Chee made some comments
5    directly to the court that prompted us to suggest to him that he was very well represented and
6    should not jeopardize that relationship. Chee CD of proceedings of February 20, 2007
7    beginning at 4:41 p.m. to the end. Seven days later, Ms. Gitre moved to withdraw as counsel
8    for Mr. Chee. When the court told Mr. Chee that he continued to misunderstand the role of
9    the client and the role of the lawyer, Mr. Chee said "then I guess I am going to represent
10   myself from now on." Transcript of February 27, 2007 at 10. I explained to Mr. Chee what
11   I would have to do before I could allow him to represent himself and advised him that the
12   problems he was having with his lawyers were his problems and not the lawyers' problems
13   because "this is now the third lawyer about whom you have said the same thing." *Id.* at 11.
14   We granted Mr. Chee's motion for psychological evaluation, denied his motion for a new
15   lawyer because there was simply no evidence to suggest denial of effective assistance of
16   counsel, denied Ms. Gitre's motion to withdraw, and advised her and Mr. Chee that she
17   would be his last lawyer. "In other words, I would give Mr. Chee the choice of having you
18   as his lawyer or represent himself under *Faretta* but no third option." *Id.* at 25. Ms. Gitre
19   was ready for trial and informed the court that "[e]verything that I believe is important in this
20   case has been done." *Id* at 27.

21   At the status conference held on May 10, 2007, we found the defendant competent to
22   stand trial and discussed at great length the question of representation. Mr. Chee indicated
23   that he still wanted Ms. Gitre as his lawyer, *id.* at 10, and Ms. Gitre described the great
24   difficulty she was having with her client. We again advised the defendant that Ms. Gitre
25   would be his last lawyer and if he wanted to represent himself, we would schedule a *Faretta*
26   hearing. *Id.* at 25. We advised Mr. Chee that he had only two choices: he could have Ms.
27   Gitre represent him or we would hold a *Faretta* hearing so that we could decide whether he
28   could represent himself. Mr. Chee would not make an unequivocal selection and so this

- 3 -

1 court construed his answer as continuing to want Ms. Gitre as his lawyer. *Id.* at 26. We then
2 gave him fourteen days within which to decide whether he wanted to represent himself. *Id.*
3 Given the checkered history of Mr. Chee's relationships with his lawyers, even though he
4 indicated that he wanted Ms. Gitre as his lawyer, *id.* at 33, out of an abundance of caution
5 we gave him a deadline within which to exercise his *Faretta* rights. *Id.* at 34.

6 On June 21, 2007, we considered Mr. Chee's motion to dismiss the indictment for
7 ineffective assistance of counsel and Ms. Gitre's renewed motion to withdraw. After a very
8 lengthy hearing, we denied Mr. Chee's motion to dismiss for ineffective assistance of
9 counsel because there was no evidence in the case to suggest that Ms. Gitre or any of the
10 lawyers appointed for Mr. Chee fell below the applicable standard of care. We then
11 addressed Ms. Gitre's motion to withdraw and once again advised the defendant that "Ms.
12 Gitre is the last lawyer the defendant is going to get from this court." Transcript of June 21,
13 2007 at 36. We specifically found that, based upon our experience with Mr. Chee "it
14 wouldn't make any difference how many lawyers we appointed; Mr. Chee is not going to be
15 happy with any of them, because he wants to be the lawyer in the case, even though, in my
16 view, he's not competent to be the lawyer in the case." *Id.* at 36-37. We also advised the
17 parties that we would only grant the motion to withdraw in tandem with a *Faretta* hearing
18 "because the only alternative in this case is either Ms. Gitre is going to represent the
19 defendant or the defendant is going to represent himself." *Id.* Ms. Gitre explained in detail
20 how impossible Mr. Chee had become. We then gave Mr. Chee an opportunity to respond
21 to Ms. Gitre's motion to withdraw and advised him that his options "are to have Ms. Gitre
22 as your lawyer or to represent yourself." *Id.* at 45-46. Mr. Chee said "I don't want her
23 representing me, but I've never said I was going to represent myself." *Id.* at 45. Mr. Chee
24 refused to answer the court's questions about which option he would choose. He did not
25 want Ms. Gitre and he did not want to represent himself. In short, he refused to abide by this
26 court's decisions even though we informed him that he had preserved his record for appeal.
27 *Id.* at 46. Based upon Mr. Chee's repeated refusal to answer this court's question, including
28 "his refusal to answer questions that would allow me to satisfy myself with respect to

1  *Faretta,*" *id.* at 47, we ruled that Mr. Chee's persistent and unreasonable demand for
2  dismissal of successive appointed counsel was the functional equivalent of a knowing and
3  voluntary waiver of counsel. We noted that "[t]he exercise of a *Faretta* right, whether
4  traditionally by asking to do it or, as here, by simply not cooperating with the court by
5  refusing to participate in the process, requires a series of things." *Id.* at 48. We found that
6  Mr. Chee understood the nature of the charges, understood the possible penalties, and
7  understood the dangers and disadvantages of self-representation. We found that Mr. Chee
8  had waived his right to counsel under the Sixth Amendment because of his repeated refusal
9  to cooperate with any of the three good lawyers who were appointed and because he would
10 not answer this court's questions about his choice of options. This prevented the court from,
11 at that time, going through a specific *Faretta* script, even though all of the substance of
12 *Faretta* had been addressed at that and prior hearings. Mr. Chee knew that if we granted Ms.
13 Gitre's motion, he would have to represent himself, but he would not commit to having Ms.
14 Gitre as his lawyer. We thus granted Ms. Gitre's motion to withdraw and appointed her
15 stand-by counsel for Mr. Chee. At the conclusion of the hearing, Mr. Chee claimed not to
16 have invoked his right to represent himself, but we advised him that by his "refusal to answer
17 my questions, you prevented me from even going over the *Faretta* colloquy with you again,
18 setting up a no win situation." *Id.* at 56.
19       At the conclusion of the final pretrial conference on July 30, 2007, Mr. Chee filed the
20 instant "Motion to Reinstate Court Appointed Attorney" (doc. 164). Believing that the
21 motion was one to appoint yet another lawyer, and not reappointment of herself, Ms. Gitre
22 did not want to respond to the motion. *Id.* at 23. Mr. Altman did not want to file a written
23 response but expressed the view that he opposed the appointment of yet a fourth lawyer. *Id.*
24 at 24.

25                                                II

26       A person charged with a crime has two competing constitutional rights. He has a
27 Sixth Amendment right to counsel and yet he also has a right to represent himself. Because
28 the exercise of the right to represent oneself by definition includes the waiver of the right to

1 counsel, *Faretta v. California,* 422 U.S. 806 (1975), requires that the accused do this
2 knowingly and intelligently. Before one can find that the waiver of the Sixth Amendment
3 right to counsel is knowingly and intelligently made, "the district court must insure that he
4 understands (1) the nature of the charges against him, (2) the possible penalties, and (3) the
5 'dangers and disadvantages of self-representation.'" *United States v. Forrester*, No. 05-
6 50410, slip op. at 8077 [9th Cir. July 6, 2007]. On the other hand, a persistent unreasonable
7 demand for dismissal of counsel and the appointment of new counsel is the functional
8 equivalent of a knowing and voluntary waiver of counsel. *United States v. Fazzini*, 871 F.2d
9 635, 642 (7th Cir. 1989). In that case, the court was faced with "a defendant who refused to
10 cooperate with numerous appointed counsel, who was warned of the consequences that his
11 failure to cooperate would have, and who insisted, despite his conduct, that he was not
12 waiving his right to appointed counsel." *Id.* The court held that under that set of
13 circumstances the defendant had knowingly and intelligently waived his right to appointed
14 counsel. *Id.* Clients who are abusive toward their lawyers may forfeit their right to counsel.
15 *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995).

16        As the procedural history of this case outlined above shows, the defendant was
17 repeatedly warned that Ms. Gitre would be his last lawyer and that his choice would be Ms.
18 Gitre or self-representation. We thus reject the defendant's contention that no warning was
19 given. We also reject his contention that no *Faretta* hearing was conducted. Mr. Chee's
20 refusal to answer this court's questions prevented this court from proceeding with the usual
21 *Faretta* script. Obviously, a criminal defendant cannot prevent a trial from going forward
22 by his own misconduct. Mr. Chee had preserved his objection to the choices given him, but
23 then was required to make a choice which he refused to do. He can hardly be heard to
24 complain he was denied a *Faretta* hearing when he would not answer this court's *Faretta*
25 questions. In any event, it is plain that Mr. Chee was quite aware of the charges against him,
26 the penalties, and the dangers and disadvantages of self-representation. These three factors
27 had been gone over repeatedly in his case. His contention that he did not ask for the
28 dismissal of his third attorney but rather of the indictment is disingenuous. The basis of his

motion was a claim that Ms. Gitre denied him effective assistance of counsel. When confronted, he simply would not accept Ms. Gitre as his lawyer. The motion to dismiss the indictment based upon denial of effective assistance of counsel was decided in tandem with Ms. Gitre's motion to withdraw. Mr. Chee knew that if Ms. Gitre's motion to withdraw was granted he would be left to represent himself. The appointment of a fourth lawyer was not an option and Mr. Chee had been advised of that repeatedly. We reaffirm our ruling that Mr. Chee constructively waived his right to counsel when he persistently and unreasonably sought dismissal of three separate lawyers without any justification. He was repeatedly warned of the consequences and yet insisted that he was not waiving his right to appointed counsel. That in itself is manipulative within the meaning of *Fazzini, supra.*

In the alternative, Mr. Chee asks that even if he constructively waived his right to counsel, he would like to reassert his right to counsel since the trial has not begun. As evidenced by Ms. Gitre's and Mr. Altman's response at the hearing on this matter, it is not entirely clear whether Mr. Chee is asking us to appoint a fourth lawyer or reappoint Ms. Gitre. To the extent that Mr. Chee asks us to appoint a fourth lawyer, the motion is denied because Mr. Chee has known all along that there would be no fourth lawyer. To the extent that he asks us to reappoint Ms. Gitre, we believe Ms. Gitre has been abused enough. On the other hand, if Ms. Gitre wants to represent the defendant she is welcome to do so.

Accordingly, IT IS ORDERED DENYING defendant's "Motion to Reinstate Court Appointed Attorney" (doc. 164). If Mr. Chee wants Ms. Gitre to represent him and if Ms. Gitre is willing to do so, Mr. Chee and Ms. Gitre will file a document to that effect no later than August 13, 2007. Otherwise, Mr. Chee will be representing himself and Ms. Gitre will continue as stand-by counsel.

DATED this 9th day of August, 2007.

_____
Frederick J. Martone
United States District Judge